UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-640-FDW-DSC

| | |
|---|---|
| MARIANO BARAYA OSPINA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRANCISCO JAVIER OSPINA BARAYA, )<br>et al., )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court for initial review of the *pro se* Amended Complaint, (Doc. No. 5), and on Plaintiff's "Addendum to the Amended Verified Complaint," (Doc. No. 6). The Plaintiff is proceeding *in forma pauperis*. (Doc. No. 4).

**I. BACKGROUND**

The *pro se* Plaintiff Mariano Baraya Ospina ("Plaintiff"), who resides in Charlotte, North Carolina, filed this action with regards to assets he believes he should have received from his deceased father's estate. (Doc. No. 1). The Complaint was dismissed on initial review as frivolous and for failure to state a claim on which relief can be granted, and the Motion seeking a temporary restraining order was denied as moot. (Doc. No. 4). The Court granted the Plaintiff 14 days to amend his Complaint to correct the deficiencies identified in the Order on initial review, subject to all timeliness and procedural requirements. (Id.).

The Plaintiff subsequently filed a *pro se* Amended Complaint and several Motions seeking temporary restraining order and preliminary injunction. (Doc. Nos. 5, 6, 8). The Motions were denied without prejudice (Doc. Nos. 7, 9), and the Amended Complaint is now before the Court

1

for initial review.

The Defendants are: Fundacion Zulaibar, a Panamanian corporation; Citibank, a banking institution with its principal place of business in New York; the Plaintiff's mother Helena Baraya de Ospina ("Helena"), a Colombian national who resides in Bogota, Colombia, and the founder and chairperson of Fundacion Zulaibar; and the Plaintiff's brothers Francisco Javier Ospina Baraya ("Francisco"), a Colombian national who resides in Madrid, Spain, and the president of Fundacion Zulaibar, and Rafael Ignacio Ospina Baraya ("Rafael"), a U.S. citizen who resides in Vero Beach, Florida, and the secretary of Fundacion Zulaibar. The Plaintiff argues that this Court has diversity jurisdiction over this action. (Doc. No. 5 at 3). He asserts claims for "breach of contract," "fraud and theft," and "breach of trust."[1] (Doc. No. 5 at 5, 6, 10).

The Plaintiff appears to allege that he expected to inherit a large amount of assets from his father, Mariano Ospina Hernandez ("Mariano"), along with his five siblings who are legitimate heirs under Colombian law.[2] He alleges that, in 2014, Francisco and Helena fraudulently induced Mariano to sell or transfer assets that the Plaintiff and other heirs expected to inherit,[3] then established Fundacion Zulaibar in Panama to hide some of those assets from Plaintiff and other legitimate heirs in a foreign bank, *i.e.*, Citibank. According to the Plaintiff, these assets included

---

[1] While the Amended Complaint will be liberally construed, it contains a great deal of apparently extraneous information that will be disregarded for purposes of this discussion. Further, there are 58 pages of exhibits attached to the Amended Complaint, all of which are in Spanish with no translation provided, except for a Letter from First Citizens Bank to the Plaintiff, dated September 24, 2021, addressing a February 24, 2015 wire transfer of $10,000 from Fundacion Zulaibar's Citibank account to Ospina Coffee International. (Doc. No. 5-1 at 23). The Plaintiff characterizes this transfer as an unsecured business loan. (Doc. No. 5 at 3).

[2] According to the Plaintiff, Mariano's legitimate heirs include himself, Francisco, and Rafael.

[3] The Plaintiff alleges that Mariano, who was then 87 years old and "perhaps mentally impaired," was required by Colombian law to undergo physical and mental testing before conducting such a transaction, but that such testing did not occur. (Doc. No. 5 at 8).

shares of construction company Ospinas y Cia S.A. that were sold for at least $5 million,[4] and farmland in Colombia that was worth at least $3 million that was transferred to Francisco. (Doc. No. 5 at 4, 7). The Plaintiff estimates the total value of Mariano's estate as $15 million. (Doc. No. 5 at 5). Mariano died on March 12, 2018 in Colombia. (Doc. No. 5 at 1).

The Plaintiff alleges that, on August 31, 2018, Mariano's legal heirs reached a binding agreement with the estate through its trustee Francisco, under which the Plaintiff was to receive 20.834% of Mariano's estate. This agreement was "ratified" in emails on August 31, 2018 and October 16, 2018. (Doc. No. 5 at 6). The Plaintiff realized, by November 20, 2020, that Francisco had deliberately failed to carry out his duties as trustee and the terms of the August 31 agreement. The Plaintiff sent Francisco a letter asking for fair and timely execution of the estate. Francisco and Helena "falsely" informed the Plaintiff that Mariano had no assets at the time of his death and therefore that there was nothing to distribute. (Doc. No. 5 at 6-7). The Plaintiff further states that, "[a]lthough this was the end result of their illegal, malicious and nefarious acts, it was also true. They had already, secretly and surreptitiously stolen Plaintiff from his fair and rightful inheritance" by selling and transferring assets including the Ospinas y Cia S.A. shares and farmland. (Doc. No. 5 at 7). The Plaintiff further alleges that Francisco later told him that the farmland was the estate's only remaining asset, which was not true because it had already been transferred to Francisco. (Doc. No. 5 at 7). On December 11, 2020, the Plaintiff filed a civil lawsuit in Colombian family court to "initiate the trial of succession of the Estate of Mariano," civil case, 2020-00530. (Doc. No. 5 at 6). The Plaintiff also filed criminal charges against Francisco Javier for illegally and fraudulently taking title to the farmland. (Doc. No. 5 at 4).

---

[4] The Plaintiff asserts that the time to file a legal challenge regarding the sale of Ospinas y Cia S.A. in Colombia expires on May 7, 2022. (Doc. No. 5 at 9).

3

On May 31, 2021, the Plaintiff "found out the true facts of the illegal and surreptitious sale of Mariano's shares in Ospinas y Cia S.A.," that the Plaintiff had been deceived by Francisco and Helena, and that all of this was done to "defraud and *steal* [from Plaintiff] his fair share [of the estate] of one million dollars (USD $1,000,000)…." (Doc. No. 5 at 9) (emphasis omitted). On November 8, 2021, the Plaintiff discovered documents regarding the creation of Fundacion Zulaibar in Panama by Francisco and Helena, which was an illegal act under Colombian law. He asserts that Fundacion Zulaibar was "established with the sole purpose of fraudulently deceiving Plaintiff and hiding the money from the sale of Mariano's shares in Ospinas y Cia S.A." (Id.) (emphasis omitted).

The Plaintiff alleges that he has been deprived of at least $1 million in assets that he should have inherited from Mariano's estate, and that he has suffered poor conditions, illness, and distress because of Francisco and Helena's actions. He appears to seek a total of $3 million in compensatory and punitive damages, and any other relief that the Court deems just and fair. The Plaintiff also seeks a temporary restraining order and preliminary injunctive relief freezing all Citibank accounts of Fundacion Zulaibar, Francisco, Helena, and Rafael. He asserts that, absent such relief, the Plaintiff's money will be transferred abroad to secret bank accounts beyond this Court's jurisdiction. (Doc. No. 5 at 13).

In the Addendum to the Verified Complaint,[5] the Plaintiff alleges that, on December 27, 2021, Francisco emailed the Plaintiff stating that he was willing to discuss the Plaintiff's inheritance rights and partition of the estate, however, the Plaintiff's follow-up communications received no response. (Doc. No. 10 at 2). Further, the Plaintiff's mother, Helena, visited the

---

[5] Fifteen pages of exhibits are attached to the Addendum, and are entirely in Spanish with no translations. (Doc. No. 10-1).

Plaintiff in Charlotte in December 2021. (Doc. No. 10 at 1-2). During that visit, Helena admitted to the Plaintiff that: Mariano sold his shares of Ospinas y Cia S.A. for more than $5 million; the proceeds were deposited in "secret foreign offshore bank accounts" under the name of Fundacion Zulaibar; Helena and Mariano established Fundacion Zulaibar to manage the proceeds from Mariano's sale of the Ospinas y Cia S.A. shares; and Helena "governs, dominates, administers, controls, and manages at her pleasure … Fundacion Zulaibar." (Doc. No. 10 at 3). According to the Plaintiff, Helena's statements are "clear proof of the plan, plot, scheme, intention and willingness to hide this asset from Plaintiff …, the Estate and Colombian tax authorities, and to commit fraud and grand theft." (Doc. No. 10 at 3). Based on this information, the Plaintiff filed new criminal charges for grand theft against Francisco in Colombia on December 28, 2021.[6] On December 29, 2021, the Plaintiff received a letter from the Colombian Tax Authority regarding an ongoing investigation that the Plaintiff requested regarding Mariano's tax filings from 2014 concerning the sale of his Ospinas y Cia S.A. shares; he alleges that this will reveal evidence of "fraud and tax evasion." (Doc. No. 10 at 4). He further alleges that Helena is presently visiting Rafael in Florida. (Doc. No. 10 at 5).

## II. STANDARD OF REVIEW

Where a plaintiff is proceeding *in forma pauperis*, the Court must review the complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). In its frivolity review, this Court must determine whether the complaint raises an indisputably meritless legal

---

[6] According to the Plaintiff, Colombian law provides that "it is a crime to hide any asset knowingly willingly and intentionally from an heir or the Estate" and that "if a spouse or heir hides any asset from the estate, he or she will [lose] the hidden portion from their inheritance, and must compensate the victim with twice the amount hidden from his or her inheritance." (Doc. No. 10 at 3).

5

theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in the Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III.  DISCUSSION[7]

First, the Plaintiff alleges that Francisco deliberately failed to carry out his duties as trustee of Mariano's estate and the August 31, 2018 agreement with Plaintiff and Mariano's other heirs regarding the estate's distribution.

The Plaintiff raised this breach of contract claim in the Complaint and it was dismissed on initial review. (Doc. No. 4 at 5-6). The renewed breach of contract claim fails to state a claim for the same reasons. Further, the Plaintiff's allegation that Francisco breached his contract to carry out the duties of the estate by distributing assets to the Plaintiff is self-defeating in that he admits that it is "true" that there was nothing to distribute. (Doc. No. 5 at 7). Accordingly, this claim is dismissed.

The Plaintiff also alludes to larceny and theft. To the extent the Plaintiff seeks to assert a claim for civil conversion, it is dismissed for the reasons set forth in the Order on initial review of the Complaint. (Doc. No. 4 at 5). To the extent that the Plaintiff refers to criminal offenses, he has no cognizable interest in such. See generally Linda R. v. Richard V., 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the

---

[7] The claims have been liberally construed, reorganized, and restated.

prosecution or nonprosecution of another.").

Next, the Plaintiff alleges that Francisco engaged in "breach of trust" by enticing Mariano to transfer the farm to him even though it was the only asset left in the estate for which he was the administrator; and that Francisco and Helena committed "fraud and theft" by: falsely informing the Plaintiff that Mariano had left no assets for the estate; falsely telling Plaintiff that the farmland remained an asset whereas it had already been misappropriated by Francisco; surreptitiously stealing the Plaintiff's rightful inheritance by fraudulently inducing Mariano to sell his shares of Ospinas y Cia S.A., then hiding the funds through Fundacion Zulaibar. (Doc. No. 5 at 6, 11).

Liberally construing the Amended Complaint, it appears that the Plaintiff is attempting to state claims for fraud and undue influence. In order to assert either a claim of general fraud or a fraud in the inducement in North Carolina, a plaintiff must allege facts supporting each element of a fraud claim, including: (1) the false representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) made with the intent deceive plaintiff; (4) that does in fact deceive plaintiff; and (5) results in damage to plaintiff. Ragsdale v. Kennedy, 286 N.C. 130, 209 S.E.2d 494, 500 (1974) (setting forth the elements of a general fraud claim); TradeWinds Airlines, Inc. v. C–S Aviation Servs., 222 N.C.App. 834, 733 S.E.2d 162, 168 (N.C. Ct. App. 2012) (setting forth the elements of a fraud in the inducement claim); Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 693 S.E.2d 149, 157 (2010) (setting forth the elements of a fraud in the inducement claim). The elements of a constructive fraud claim include: "(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." Trantham v. Michael L. Martin, Inc., 228 N.C. App. 118, 123, 745 S.E.2d 327, 332 (N.C. Ct. App. 2013) (quoting White v. Consol. Planning, Inc., 166 N.C. App. 283, 603 S.E.2d 147, 156 (2004)). A party must plead the circumstances of

fraud with particularity. Fed. R. Civ. P. 9(b).

Undue influence is defined as "a fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result." In re Estate of Loftin and Loftin v. Loftin, 285 N.C. 717, 722, 208 S.E.2d 670, 674–75 (1974). The general elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence. Griffin v. Baucom, 74 N.C. App. 282, 285-86, 328 S.E.2d 38, 41 (1985).

Liberally construing the Amended Complaint and drawing all inferences in the Plaintiff's favor, the Plaintiff has minimally stated claims that Francisco and Helena engaged in fraud and undue influence. These claims will be permitted to proceed at this early juncture.

The Plaintiff seeks a preliminary injunction and temporary restraining order to freeze the assets of Fundacion Zulaibar, Francisco, Helena, and Rafael at Citibank. These claims fail for reasons already articulated by the Court. See (Doc. Nos. 7, 9). Accordingly, the Plaintiff's requests for preliminary injunction and temporary restraining order that are incorporated in the Amended Complaint are denied. Further, the Plaintiff does not appear to assert any claims against Fundacion Zulaibar, Rafael, and Citibank other than those claims for preliminary injunctive relief/temporary restraining order. Accordingly, those Defendants will be dismissed from this action without prejudice.

The Plaintiff's Addendum to the Amended Verified Complaint is liberally construed as a Motion for Leave to Supplement and is granted insofar as the Plaintiff seeks to add factual allegations that occurred after the date the Amended Complaint was filed. See Fed. R. Civ. P. 15(d) (the court may permit a party to serve a supplemental pleading setting out "any transaction,

8

occurrence, or event that happened after the date of the pleading to be supplemented...."). He does not appear, however, to assert any new legal claims in the Supplemental Complaint.[8]

## IV. CONCLUSION

The Amended Complaint has passed initial review against Defendants Francisco Javier Ospina Baraya and Helena Baraya de Ospina for fraud and undue influence, and the remaining claims are dismissed without prejudice. The Motions for temporary restraining order and preliminary injunction that are incorporated in the Amended Complaint are denied. the Addendum is construed as a Motion to Supplement and is granted as stated in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Compliant (Doc. No. 5) has passed initial review on the Plaintiff's fraud and undue influence claims against Francisco Javier Ospina Baraya and Helena Baraya de Ospina.

2. The remaining claims are **DISMISSED** without prejudice.

3. Plaintiff's "Addendum to the Amended Verified Complaint," (Doc. No. 10), is construed as a Motion to Supplement and is **GRANTED** as provided in this Order.

4. The Clerk is directed to terminate Rafael Ignacio Ospina Baraya, Citibank, and Fundacion Zulaibar as Defendants.

5. **IT IS FURTHER ORDERED** that the Clerk of Court is directed to notify the United States Marshal who, pursuant to FED. R. CIV. P. 4(c)(3), shall serve process upon Defendants Francisco Javier Ospina Baraya and Helena Baraya de Ospina.

---

[8] Should the Plaintiff seek to amend, he is notified that piecemeal amendment will not be permitted, and he reminded that he is required to comply with all applicable procedural rules. See generally Fed. R. Civ. P. 7, 15.

9

All costs of service shall be advanced by the United States. Any recovery in this action will be subject to payment of fees and costs, including service of process fees and the $402.00 filing fee.

Signed: January 6, 2022

Frank D. Whitney
United States District Judge

10