# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CASE NO. 3:21-CV-00640-FDW-SCR

| | |
|---|---|
| **MARIANO OSPINA BARAYA,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) **ORDER** |
| | ) |
| **FRANCISCO JAVIER OSPINA BARAYA,** *et al.*, | )<br>) |
| **Defendants.** | )<br>)<br>) |

**THIS MATTER** is before the Court on a number of miscellaneous motions. These motions have been fully briefed and are now ripe for review. For the reasons below, Plaintiff's "Motion for Entry of Default of Defendant Rafael Ospina Baraya," (Doc. No. 44), is **DENIED**; Rafael's "Motion to Strike [D.E. 58] as an Improper Surreply," (Doc. No. 60), is **GRANTED** and Plaintiff's "Response to Defendant Rafael Ospina Baraya's Amended Reply to Motion to Dismiss With Prejudice," (Doc. No. 58), is **STRICKEN** from the record; and Rafael's "Motion to Dismiss with Prejudice," (Doc. No. 50), is **GRANTED IN PART** to the extent it seeks dismissal of Plaintiff's Second Amended Complaint but **DENIED IN PART** to the extent it requests such dismissal be with prejudice. As such, this action is **DISMISSED** without prejudice. Further, Rafael's "Motion for Sanctions," and Plaintiff's "Emergency Motion to Strike Defendant's Motion for Sanctions," (Doc. Nos. 70, 71) are **DENIED**. Finally, Plaintiff's "Motion for Entry of Default of Defendants Javier Ospina Baraya, Angela Ospina Baraya, and Patricia Ospina Baraya," "Motion to Clarify Court Order and Motion for Entry of Default of Defendants," "Response to Defendant Rafael Ospina Baraya's Filing," and "Compelling Motion to Strike Inadmissible Motions by Defendant Rafael Ospina Baraya," (Doc. Nos. 43, 56, 63, 67), are **DENIED AS MOOT**.

1

# I. BACKGROUND

On November 30, 2021, Plaintiff filed his *pro se* Complaint against Defendants Francisco Javier Ospina Baraya, Helena Baraya de Ospina, Rafael Ignacio Ospina Baraya, Fundacion Zulaibar, and Citibank, concerning an inheritance dispute over assets Plaintiff alleges he was owed from his deceased father's estate. (Doc. No. 1). On December 3, this Court dismissed Plaintiff's original Complaint without prejudice on initial review as frivolous and for failure to state a claim upon which relief could be granted. (Doc. No. 4). The Court gave Plaintiff fourteen to amend his Complaint to correct the deficiencies it identified. (Id.).

On December 15, Plaintiff filed his *pro se* Amended Complaint against the same Defendants alleging claims for breach of contract, fraud and theft, and breach of trust. (Doc. No. 5). The following week, the Court denied Plaintiff's third Motion for Temporary Restraining Order and Preliminary Injunction, finding he "failed to meet his burden of establishing this Court has either general or specific personal jurisdiction over any of the Defendants. In fact, Plaintiff fails to even assert, in his Motion or his Amended Complaint, this Court's exercise of personal jurisdiction over any of the Defendants would be proper." (Doc. No. 9, p. 3).

On January 7, 2022, the Court determined Plaintiff's Amended Complaint passed initial review on his fraud and undue influence claims against Francisco and Helena but dismissed the remaining claims and Defendants. (Doc. No. 11). After subsequent attempts to amend were denied, (Doc. No. 18; Text-Only Order, April 22, 2022), Plaintiff attempted to file additional civil actions. The Court dismissed these as duplicative of this case, see Case Nos. 3:22-cv-309-MOC-DCK;[1] 3:22-cv-376-RJC-DSC,[2] but allowed Plaintiff a final opportunity to amend. (Doc. No. 28).

---

[1] Plaintiff named as Defendants: Francisco, Rafael, Fundacion Zulaibar, Citibank, the estate of his deceased father, and his sisters Angela Mercedes Ospina Baraya and Patricia Helena Ospina Baraya.
[2] Plaintiff named as Defendants: Rafael, Angela, and Patricia.

2

Finally, on August 24, 2022, Plaintiff filed his Second Amended Complaint against Defendants Francisco, Helena, Angela, Rafael, and Patricia (collectively "Defendants"), asserting claims for fraud and undue influence. (Doc. No. 29). To date, Rafael is the only Defendant who has appeared, having filed his *pro se* Motion to Dismiss on February 7, 2023. (Doc. No. 50).

In short, Plaintiff alleges that when his father Mariano Ospina Hernandez died, he left behind substantial assets in various forms, including "haciendas and farms, rural and urban land, business companies, newspapers, and other assets." (Doc. No. 29, p. 5–6). Plaintiff further asserts he was entitled to receive 20.834% of his father's estate. (Id. at 6). However, Plaintiff contends Defendants have "depriv[ed] [him] of his legal inheritance of no less than one million dollars." (Id. at 7). Plaintiff alleges they "deceived and tricked" his father into transferring title and possession of a farm, fraudulently induced their father to sell shares in one of his businesses, "repeatedly denied the existence of the five million dollars . . . from the sale of [their father's] shares of" that business, and established Fundación Zulaibar to deceive their father and "defraud **Plaintiff, the Estate,** and the Colombian Tax Authority." (Id. at 7–8, 26) (emphasis in original).[3] As such, Plaintiff seeks an Order directing Defendants to pay him "the one million dollars . . . of his legitimate inheritance from his father," three million dollars in compensatory damages, and three million dollars in punitive damages. (Id. at 27).

---

[3] Though Plaintiff appears to refer in his factual background to additional claims including misappropriation, conversion, breach of contract, and theft, his Second Amended Complaint only pleads and supports claims for fraud and undue influence. (See Doc. No. 29). Further, this Court has already dismissed his claims beyond fraud and undue influence, and because he "merely seeks to reiterate the evidence already presented in" his previous complaints, (Doc. No. 18), these claims fail here for the same reasons. (See Doc. Nos. 4, 9, 11, 18).

Similarly, Plaintiff again alleges—at the conclusion of his Second Amended Complaint—that the Fundación Zulaibar and Citibank are liable under the Pinkerton doctrine. (Doc. No. 29, p. 25). However, because Plaintiff fails to allege additional facts beyond those already reviewed by this Court, (see Doc. Nos. 4, 9, 11, 18), as before, "the Court has no means of determining whether this Court, sitting in diversity, has subject matter or personal jurisdiction over the[se] proposed parties." (Doc. No. 18, p. 10).

3

The Court notes that while Plaintiff's Second Amended Complaint only requests relief against Angela, Rafael, and Patricia, (id.), it also seeks "[l]eave to Supplement in order to add" these three Defendants to his surviving claims for fraud and undue influence against Francisco and Helena, (id. at 1). Thus, despite this Court's warning against piecemeal amendments, (see Doc. No. 28, p. 2), the Court construes Plaintiff's Second Amended Complaint as alleging claims for fraud and undue influence against Defendants Francisco, Helena, Rafael, Angela, and Patricia.

Rafael filed the instant "Motion to Dismiss with Prejudice" on February 7, 2023, (Doc. No. 50), arguing Plaintiff's claims must be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficient service of process, and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1), (2), (3), (5), and (6) of the Federal Rules of Civil Procedure. Two days later, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), this Court issued a Roseboro Order advising Plaintiff, who appears *pro se*, of the burden he carries in responding to Defendant Rafael's Motion to Dismiss. (Doc. No. 51). Further, the Court warned that "[f]ailure to file a timely and persuasive response in accordance with the principles explained [therein] could lead to the dismissal of Plaintiff['s] lawsuit against all Defendants." (Id. at 8).

Plaintiff filed his "Motion in Opposition to All Motions and Pleadings from Defendant" on February 10, and his "Motion in Response to Defendant Rafael Ospina Baraya's Motion to Dismiss with Prejudice" on February 15, which this Court construes as his response and amended response. (Doc. Nos. 52, 53). Rafael filed his "Reply in Support of Motion to Dismiss With Prejudice" on February 16, and his "Amended Reply in Support of Motion to Dismiss With Prejudice" on February 22. (Doc. Nos. 54, 55). Finally, Plaintiff filed a "Response to Defendant Rafael Ospina Baraya's Amended Reply to Motion to Dismiss With Prejudice"—which this Court construes as a

surreply—on February 27, (Doc. No. 58). In response, Rafael filed a "Motion to Strike [D.E. 58] as an Improper Surreply." (Doc. No. 60). Plaintiff responded on March 3, and Rafael filed a Notice of No Intent to Reply on March 7. (Doc. Nos. 62, 65). Thus, the Court now turns to the miscellaneous Motions before it.

## II. MOTION FOR ENTRY OF DEFAULT OF DEFENDANT RAFAEL OSPINA BARAYA

Plaintiff filed his "Motion for Entry of Default of Defendant Rafael Ospina Baraya," (Doc. No. 44), on December 21, 2022, requesting that this Court enter default against Rafael because he was served on November 25, but had not yet filed an answer. Under the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Thus, the party seeking entry of default must demonstrate the adverse party was properly served but failed to respond. However,

> where a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on the merits. In the final analysis, default judgments are not favored in the law, and the entry of such a judgment is only appropriate where there has been a clear record of delay or contumacious conduct.

Wendt v. Pratt, 154 F.R.D. 229, 230 (D. Minn. 1994) (cleaned up) (cited in 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2682 (3d ed. 2006)).

Here, the Court finds no justification for entry of default against Rafael. Rafael appeared on January 11, 2023, was granted two extensions, and timely filed his "Motion to Dismiss with Prejudice." (Doc. Nos. 45, 46, 48, 49, 50; Text-Only Order, February 7, 2023). Accordingly, entry of default against him is not warranted. FED. R. CIV. P. 12(a)(1); FED. R. CIV. P. 55(a). Therefore, Plaintiff's "Motion for Entry of Default of Defendant Rafael Ospina Baraya," (Doc. No. 44), is **DENIED**.

### III.     MOTION TO STRIKE [D.E. 58] AS AN IMPROPER SURREPLY

In his "Motion to Strike [D.E. 58] as an Improper Surreply," (Doc. No. 60), Rafael seeks to strike Plaintiff's "Response to Defendant Rafael Ospina Baraya's Amended Reply to Motion to Dismiss With Prejudice," (Doc. No. 58). The Local Rules of this Court provide: "Surreplies are neither anticipated nor allowed by this Rule, but leave of Court may be sought to file a surreply when warranted." LCvR 7.1(e). In general, courts permit a party to file a surreply when fairness dictates based on new arguments or evidence. See Turner v. Griffin, No. 1:17 CV 334, 2019 WL 3783293, at *1 (W.D.N.C. Aug. 9, 2019) (quoting DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010) ("courts permit a party to file a surreply 'only when fairness dictates based on new arguments raised in the previous reply'"); see LCvR 7.1(e) ("A reply brief should be limited to a discussion of maters newly raised in the response.")); Hall v. Stouffer, No. GLR-15-1008, 2018 WL 8335491, at *6–7 (D. Md. Sept. 25, 2018) (granting Plaintiff's Motion For Leave to File Surreply based on new evidence presented as an attachment to Defendants' Reply).

Here, fairness dictates striking Plaintiff's surreply because it is not a response to new arguments in Rafael's preceding Amended Reply. Instead, Plaintiff's surreply merely reiterates facts and conclusions—which Plaintiff has already alleged in this matter under a variety of headings—to again urge this Court to disregard all of Rafael's filings and enter judgment in his favor. (See, e.g., Doc. No. 53, 58, 62, 63, 67). They are not in response to a new argument or allegation in Rafael's reply that fairness would dictate allowing an opportunity to address, and they have no bearing on the Motion to Dismiss. (Doc. No. 55).

Therefore, because leave to file a surreply is not warranted, Rafael's "Motion to Strike [D.E. 58] As an Improper Surreply," (Doc. No. 60), is **GRANTED**, and Plaintiff's surreply, (Doc. No. 58), is **STRICKEN** from the record.

### IV. MOTION TO DISMISS WITH PREJUDICE

In his "Motion to Dismiss with Prejudice," (Doc. No. 50), Rafael moves for dismissal with prejudice of all Plaintiff's claims, for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficient service of process, and failure to state a claim upon which relief can be granted. For the reasons outlined below, the Court concludes that it must dismiss Plaintiff's Complaint without prejudice for lack of both subject matter and personal jurisdiction.

**A.  Subject Matter Jurisdiction**

*1.  Standard of Review*

"The United States Courts are courts of specifically limited jurisdiction and may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). Before a court can rule on any other issue, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal quotation marks omitted). If there is doubt whether such jurisdiction exists, the court must "raise lack of subject-matter jurisdiction on its own motion," without regard to the parties' positions. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (noting federal courts are independently obligated to determine whether subject matter jurisdiction exists, "even when no party challenges it"); Mansfield, Coldwater & Lake Mich. Ry. v. Swan, 111 U.S. 379, 382 (1884).

Thus, it is well-settled that lack of subject matter jurisdiction may be raised at any time by a litigant or the court *sua sponte*. See, e.g., id. at 384. Finally, "[n]o party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing

7

the defect, must raise the matter on its own." Wis. Dept. of Corrs. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

Federal district courts retain original subject matter jurisdiction when, among other specific scenarios expressed in Title 28 of the U.S.C., either: (1) the complaint raises a federal question under 28 U.S.C. § 1331, or (2) the requirements for amount in controversy and diversity of citizenship are met under 28 U.S.C. § 1332. As the party asserting jurisdiction, the plaintiff bears the burden of proving subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). However, a document filed *pro se* must be "liberally construed" and "a *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). Here, it is undisputed that federal question jurisdiction does not exist here. Thus, the Court turns to whether the requirements for diversity jurisdiction exist.

*2. Discussion*

When subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), the parties' citizenship must be completely diverse—such that "no plaintiff may be a citizen of the same state as any defendant"—and "the amount in controversy must exceed $75,000, exclusive of interest and costs." Elliott v. Am. States Ins. Co., 883 F.3d 384, 394 (4th Cir. 2018) (citing 28 U.S.C. § 1332(a)(1)). The party asserting subject matter jurisdiction based on diversity must prove the amount in controversy requirement by a preponderance of the evidence. L. Offs. of Michele A. Ledo, PLLC v. BellSouth Advert. & Publ'g Corp., 2008 WL 11429808, at *2 (E.D.N.C. Mar. 27, 2008). Here, the Court cannot conclude that Plaintiff has satisfied the amount in controversy requirement.

Generally, the amount claimed by the plaintiff controls the amount in controversy determination. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). However, "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, . . . the suit will be dismissed." Id. at 288.[4] Further, "[e]xemplary or punitive damages may be included in determining whether a plaintiff has satisfied the amount in controversy requirement." Gordon v. Nat'l Bus. Consultants, Inc., 856 F.2d 186 (4th Cir. 1988) (citation omitted); see also R.L. Jordan Oil Co. of N.C., Inc. v. Boardman Petroleum, Inc., 23 F. App'x 141, 145 n.3 (4th Cir. 2001). However, although a *pro se* complaint is entitled to liberal construction, the Court is unable to invent potential bases for exercising subject matter jurisdiction. See Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 809 n.6 (1986) ("jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").

Finally, "federal courts are suspicious of claims filed in federal court that attempt to circumvent the amount in controversy requirements for diversity jurisdiction by seeking excessive and unrealistic punitive damages. . . ." Smith v. Am. Gen. Life & Acc. Ins. Co., 337 F.3d 888, 893 (7th Cir. 2003) (citation omitted). Therefore, "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined." Saval v. BL Ltd., 710 F.2d 1027, 1033 (4th Cir. 1983); see also Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 225 (2d Cir. 2017) (stating that when determining the jurisdictional amount, "a claim for punitive

---

[4] See also Wiggins v. North American Equitable Life Assur. Co., 644 F.2d 1014, 1017 (4th Cir. 1981) (citing St. Paul Mercury Indem. Co., 303 U.S. 283, when discussing the amount in controversy requirement); McDonald v. Patton, 240 F.2d 424, 426 (4th Cir. 1957) ("[I]f it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction.").

9

damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages" (cleaned up)).[5]

Here, Plaintiff—without any explanation—declares in his Amended Complaint that "[t]his Honorable Court has **jurisdiction** over this action, case, and the Defendants **Angela, Rafael,** and **Patricia** because of the diversity of jurisdiction among the parties involved in this case." (Doc. No. 29, p. 26) (emphasis in original). This lone conclusory statement fails to demonstrate that the amount in controversy requirement is satisfied, and the record does not do so either. Plaintiff's request for relief consists of three types of damages, which the Court addresses in turn.

i.  Plaintiff's Inheritance

Plaintiff contends he has been injured by the "conversion and hiding of his inheritance money in excess of one million dollars." (Doc. No. 29, p. 26). Accordingly, he requests an order that Defendants pay him the one million dollars of his inheritance that he is owed. (Id.). However, this claim fails to confer jurisdiction for two reasons. First, Plaintiff asserts "the case at hand has absolutely nothing to do with the probate matters" related to his deceased father, as that "is the function of the Family Judge in Bogota, Colombia." (Doc. No. 53, p. 4). Nevertheless, his request for relief—that this Court order Defendants to "convey, transfer and pay to **Plaintiff** the one million dollars . . . belonging to him as his legal and just portion of his legitimate inheritance from his father **Mariano**, which is from the five million dollars . . . of the surreptitious sale, transfer,

---

[5] While "[p]unitive damages are included in the amount in controversy, . . . the existence of the required amount must be supported by competent proof." Peterson v. Travelers Indem. Co., 867 F.3d 992, 995 (8th Cir. 2017) (cleaned up). This is especially true "[w]hen a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction." See Anthony v. Sec. Pac. Fin. Servs., Inc., 75 F.3d 311, 315 (7th Cir. 1996) (noting that under such circumstances, the court "should scrutinize that claim closely"); see also Pyskaty, 856 F.3d at 225 (noting that "a trial court is plainly not compelled to accept a claim of punitive damages, however unwarranted, made for the purpose of conferring federal jurisdiction" (internal quotations omitted)). As a threshold matter, there must be competent proof showing punitive damages are permitted under the substantive law governing the plaintiff's claims. Nidy v. U.S. Bancorp Gov't Leasing & Fin., Inc. ex rel. Holders of COMM 2013-CCRE12 Mortg. Tr. Com. Mortg. Pass-Through Certificates, No. 19-1759, 2022 WL 2128837 *2 (4th Cir. June 14, 2022).

and hiding of the shares of" their father's business—seeks just that. (Doc. No. 29, p. 27) (emphasis in original). Federal courts lack jurisdiction over such claims. See Marshall v. Marshall, 547 U.S. 293, 311–12 (2006).[6] Second, Plaintiff admits that the probate proceedings before the Family Court in Bogota, Colombia, are still pending, (Doc. No. 53, p. 5) and as such, any claim for an inheritance award is purely speculative at this juncture.[7]

Thus, Plaintiff's contention that he *is not* contesting the probate process or "the distribution of the assets of no value" that his father left behind, (Doc. No. 53, p. 7), does not change the reality of what Plaintiff *is* asking. Plaintiff's claims ask this Court to determine that, even though the probate process is still ongoing: (1) Plaintiff was entitled to the million dollars he claims, (2) he has already been deprived of this inheritance, and (3) Defendants are liable for such deprivation. However, the Court cannot provide such relief.

### ii. Compensatory Damages

Next, Plaintiff seeks "three million dollars . . . in compensation, restitution, retribution, and reparation, for causing severe and extreme affliction, aggravation, distress, harm, pain, vexation, and irreparable health, emotional, mental, physical, and material damages." (Id.). However, Plaintiff provides no factual or legal basis for this award of compensatory damages. The only damages award Plaintiff even nominally explains is the amount he is owed as his inheritance.

---

[6] The Supreme Court held:
"[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."
Marshall, 547 U.S. at 311–12.

[7] Without reaching the issue, the Court notes that principles of international abstention and comity likely support dismissal here in light of the underlying facts and the numerous related lawsuits—civil and criminal—that Plaintiff cites as ongoing in Colombia, involving these parties, Plaintiff's alleged inheritance, Defendants' alleged conduct, and probate of their father's estate. (Doc. No. 29, p. 5, 7, 9, 22, 23, 24, 25; Doc. No. 63, p. 6, 7); see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) (discussing the abstention doctrine); Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800 (1976) (same); Hilton v. Guyot, 159 U.S. 113 (1805) (discussing the principle of international comity).

11

Upon review of the record, there is no factual allegation to plausibly support Plaintiff's request for three million dollars in compensatory damages. Thus, on its face, the Amended Complaint has failed to provide sufficient evidence to support the award of compensatory damages.

### iii. Punitive Damages

Finally, Plaintiff requests "three million dollars in compensatory, and punitive damages, expenses, costs, and any other form of compensation, restitution, retribution deemed appropriate, just, and fair by this Honorable Court." (Doc. No. 29, p. 27). However, once again, Plaintiff provides no explanation, factual basis, or legal support, for the punitive damages sought, and the Court will not invent such a basis for him. See Merrell Dow Pharm., Inc., 478 U.S. at 809 n.6.

Therefore, under the facts before it, the Court cannot conclude that Plaintiff's claim for damages in excess of $75,000 was made in good faith, nor can it conclude that such damages were actually incurred. Accordingly, because Plaintiff has failed to satisfy the requirement under 28 U.S.C. § 1332(a) that the amount in controversy exceeds $75,000, dismissal for lack of subject matter jurisdiction is appropriate. Furthermore, for the following reasons, dismissal for lack of personal jurisdiction is also warranted.

**B.  Personal Jurisdiction**

*1.  Standard of Review*

In order for a court to grant relief, the court must have "jurisdiction over both the subject matter and the parties." Burford v. Gilley, 5:14-cv-160, 2015 WL 1534078, at *2 (N.D.W. Va. April 6, 2015) (citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982)). For a court to have personal jurisdiction, a plaintiff must show that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. Id. at *2 (citing Carefirst of Maryland, Inc.

v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003)). When, as here, a district court considers a question of personal jurisdiction based on the allegations of a complaint and motions papers, the plaintiff has the burden of making a *prima facie* showing in support of its assertion of jurisdiction. Id. at *1 (citing Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014); Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016)). The plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence. Id.

The determination of personal jurisdiction is based upon a two-part inquiry. The first, or statutory, part requires the assertion of personal jurisdiction under North Carolina's long-arm statute. The second, or constitutional, part requires the exercise of personal jurisdiction comply with due process. Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Courts have historically construed North Carolina's long-arm statute to be coextensive with the Due Process Clause. This construction collapses the statutory and constitutional requirements into a single inquiry of whether the non-resident defendant has such "minimum contacts" with the forum state that exercising jurisdiction over it does not offend "traditional notions of fair play and substantial justice." See Nolan, 259 F.3d at 215 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two types of long-arm jurisdiction over a defendant: general and specific. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 & 9 (1984). General jurisdiction requires that the defendant's continuous and systematic contacts with the forum state be so substantial and of such a nature as to render the defendant essentially at home in the forum state. See Daimler AG v. Bauman, 571 U.S. 117 (2014). Specific jurisdiction, on the other hand, can be established if the defendant's relevant conduct has "such a connection with the forum state that it is fair for the defendant to defend itself in that state." CFA Inst. v. Inst. of Chartered Fin.

Analysts of India, 551 F.3d 285, 292 n. 15 (4th Cir. 2009) (citing Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414-15). Specific jurisdiction can also be established when the cause of action "arises out of the defendant's contacts with the forum." Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005) (citation omitted).

　　*2. Discussion*

　　Here, the Court has already determined—on more than one occasion—that Plaintiff has failed to meet his burden of establishing personal jurisdiction over any of the Defendants. (See Doc. No. 9, p. 3 ("In fact, Plaintiff fails to even assert, in his Motion or his Amended Complaint, this Court's exercise of personal jurisdiction over any of the Defendants would be proper.")). To that end, the Court noted in its Order denying Plaintiff's Second Motion for Leave to File an Amended Complaint that "Plaintiff again fail[ed] to show this Court has personal jurisdiction over the dismissed parties, . . . [and] the Court has no means of determining whether this Court, sitting in diversity, has subject matter or personal jurisdiction over the proposed parties." (Doc. No. 18, p. 6). In addition, the Court "again warn[ed] Plaintiff about frivolity and minimal pleading requirements. As set forth above, proceedings *in forma pauperis* 'shall be dismissed at any time if the court determines … (B) the action or appeal—(i) is frivolous or malicious; [or] (ii) fails to state a claim on which relief may be granted[.]' 28 U.S.C. § 1915(2)." (Doc. No. 18).

　　Plaintiff's Second Amended Complaint fares no better; for the same reasons, he has failed to demonstrate this Court's personal jurisdiction over the Defendants. As stated above, Plaintiff's Second Amended Complaint only cursorily addresses jurisdiction: "This Honorable Court has **jurisdiction** over this action, case, and the Defendants **Angela, Rafael,** and **Patricia** because of the diversity of jurisdiction among the parties involved in this case." (Doc. No. 29, p. 26) (emphasis in original). Such a vague and conclusory statement does not satisfy Plaintiff's burden.

14

First, Plaintiff has failed to demonstrate Defendants have sufficient contacts with North Carolina to allow for either general or specific jurisdiction. Daimler AG, 571 U.S. at 119 (discussing general jurisdiction); id. at 126–27. In fact, the only references to North Carolina alleged in Plaintiff's Second Amended Complaint are: (1) Plaintiff's own residence here; (2) Helena's visit to Charlotte in December, 2021, during which no service occurred; and (3) his 1996 state court lawsuit against Angela, Rafael, and Patricia. (Doc. No. 29, p. 1, 19–20; 24). Even taking these allegations as true, they fail to render any of the Defendants "essentially at home in the forum State," Daimler AG, 571 U.S. at 119, nor do they provide any basis for finding that the suit "arises out of or relates to the defendant's contacts with the forum," id. at 127 (cleaned up). Rather, the facts demonstrate none of the alleged conduct took place in North Carolina, much less in Charlotte, and that the only party with any connection to Charlotte is Plaintiff.

Without explanation, Plaintiff concludes his "claims, legal bases, circumstances, and principles completely satisfy the[] five fairness factors" courts consider in determining whether specific jurisdiction exists. (Doc. No. 53, p. 8). The Court disagrees. In deciding whether specific jurisdiction exists, courts consider several factors, including: "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable". Cambridge Homes of N.C., LP v. Hyundai Const., Inc., 670 S.E.2d 290, 295 (N.C. App. 2008) (quoting Woods Intern., Inc. v. McRoy, 436 F. Supp. 2d 744, 748–49 (M.D.N.C. 2006)). Aside from this conclusory statement, Plaintiff has failed to point to any facts supporting this determination, and upon review of the record, the Court cannot find any.

Thus, Plaintiff's Second Amended Complaint is devoid of any showing in support of his assertion that this Court has personal jurisdiction over Defendants. Further, based on the record before it, the Court cannot find that notions of "fair play and substantial justice" support this Court's jurisdiction. Thus, dismissal for lack of personal jurisdiction is appropriate.

*3. Prejudice*

In his Motion, Rafael seeks dismissal of Plaintiff's claims with prejudice. However, a dismissal for lack of jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013) (citing FED. R. CIV. P. 41(b); Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94 (1998); Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 222 (4th Cir. 2001) (en banc)). Thus, Rafael's Motion to Dismiss is denied to the extent it seeks dismissal of Plaintiff's claims with prejudice, and Plaintiff's Second Amended Complaint is dismissed in its entirety without prejudice.[8]

*4. Non-Responding Defendants*

Finally, while Rafael is the only Defendant who has appeared, the Court also dismisses Plaintiff's claims against the Non-Responding Defendants, for lack of subject matter and personal jurisdiction as detailed above. This is bolstered by three important details. First, Plaintiff is proceeding in this matter *in forma pauperis*. (Doc. Nos. 2, 4). Though personal jurisdiction is a

---

[8] Because this Court lacks jurisdiction over Plaintiff's claims under Rules 12(b)(1) and 12(b)(2), the Court need not—and cannot—reach Rafael's additional arguments for dismissal. See Steel Co., 523 U.S. 83 (1998); Southern Walk at Broadlands Homeowner's Ass'n, Inc., 713 F.3d at 185 (citing Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original); Fredericksen v. City of Lockport, 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render . . . . 'No jurisdiction' and 'with prejudice' are mutually exclusive.") (internal citation omitted)).

waivable defense, it is apparent from the face of Plaintiff's Second Amended Complaint that this Court lacks personal jurisdiction over all of the Defendants. 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines . . . the action or appeal . . . is frivolous or malicious."); see Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656–57 (4th Cir. 2006) (citing Nasim v. Warden, Md. House of Corrections, 64 F.3d 951, 953–54 (4th Cir. 1995)).[9]

Second, the Court has warned Plaintiff more than once that he may not attempt to relitigate claims and legal theories already addressed, (see, e.g., Doc. No. 18, p. 6), that he bears the burden of demonstrating this Court's jurisdiction over both the subject matter and the parties, (see, e.g., Doc. Nos. 9, 18, 51), that failure to do so could respond in dismissal of his Second Amended Complaint, (see, e.g., Doc. Nos. 51; see also Doc. No. 11), and that piecemeal, frivolous, or duplicative pleadings will not be permitted, (see, e.g., Doc. No. 18, 28). Further, this Court has provided Plaintiff with multiple opportunities to amend his complaint to remedy the jurisdictional deficiencies. (Doc. Nos. 1, 5, 29). However, Plaintiff has again failed to do so, and for the reasons discussed above, his continued attempts to re-allege the same facts have proven fatal. See Ostrzenski v. Seigel, 177 F.3d 245, 252–53 (4th Cir. 1999); Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that permissible reasons for denying leave to amend pleadings include "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment").

Third, though Plaintiff argues all the Defendants are in default for failure to appear in any way, Plaintiff has repeatedly failed to provide this Court with proof that he has properly served the

---

[9] See also Alvarado v. County of Tulare, No. 3.17CV00040, 2017 WL 3129821, at *2 (W.D. Va. July 21, 2017) (citing Trujillo v. Williams, 465 F.3d 1210, 1216–17 (10th Cir. 2006) (holding a district court may *sua sponte* dismiss an action under 28 U.S.C. § 1915 for lack of personal jurisdiction "when the defense is obvious from the face of the complaint and no further factual record is required to be developed") (citation and internal quotation marks omitted)); Gonzalez v. Spunk Indus., Inc., No. ELH-18-2935, 2019 WL 4392951, at *2 (D. Md. Sept. 13, 2019) (collecting cases dismissing an action *sua sponte* for lack of personal jurisdiction); Marin v. La Paloma Healthcare Ctr., 636 F. App'x 586, 588 (3d Cir. 2016) (holding the case was properly dismissed for lack of personal jurisdiction under § 1915 where "the lack of a connection between the Defendants and [the forum state] [was] apparent from the face of the complaint").

Non-Responding Defendants. (See, e.g., Doc. No. 13; Doc. Nos. 20–24; Doc. Nos. 25–27; Doc. Nos. 30–31; Doc. Nos. 32–34; Doc. No 42). To date—almost twenty-two months after Plaintiff filed his original Complaint—the record is devoid of any such proof.

Therefore, based on the record, the Court lacks subject matter jurisdiction over the claims in Plaintiff's Second Amended Complaint, and it lacks personal jurisdiction over all of the Defendants in this action. As a result, Rafael's Motion to Dismiss is **GRANTED IN PART**, to the extent it seeks dismissal of all of Plaintiff's claims against all Defendants, but **DENIED IN PART**, to the extent it seeks dismissal with prejudice. Accordingly, Plaintiff's Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE** against all Defendants.

### V. MOTION FOR SANCTIONS

Also pending before this Court is Rafael's "Motion for Sanctions," (Doc. No. 70), which asks this Court to sanction Plaintiff under Rule 11 of the Federal Rules of Civil Procedure, for filing frivolous, unsupported pleadings in bad faith. (Doc. No. 70, p. 3). However, in light of Plaintiff's *pro se* status, and because this Court has determined this action must be dismissed for lack of jurisdiction, the Court concludes Rule 11 sanctions are not warranted. Therefore, Rafael's "Motion for Sanctions," (Doc. No. 70), is **DENIED**.

Additionally, Plaintiff filed an "Emergency Motion to Strike Defendant's Motion for Sanctions." (Doc. No. 71). Therein, Plaintiff briefly argues against Rafael's Motion, reiterates prior arguments and factual background concerning his dispute with his family, and asks this Court to grant his Motion, deny and strike Rafael's Motion, and impose sanctions against Rafael. Thus, Plaintiff's Motion violates the requirement that separate motions must be filed separately. LCvR 7.1. Further, Plaintiff's recitation of already-asserted conclusions lacks any explanation or legal support for why Rafael's Motion must be stricken and why sanctions against him are warranted.

Accordingly, Plaintiff's "Emergency Motion to Strike Defendant's Motion for Sanctions," (Doc. No. 71), is **DENIED**.

## VI.   REMAINING MOTIONS

Having determined that this Court lacks both subject matter and personal jurisdiction, Plaintiff's "Motion for Entry of Default of Defendants Javier Ospina Baraya, Angela Ospina Baraya, and Patricia Ospina Baraya," (Doc. No. 43), and Plaintiff's "Motion to Clarify Court Order and Motion for Entry of Default of Defendants," (Doc. Nos. 43, 56), are **DENIED AS MOOT**.

Accordingly, because they relate to, and flow from, Plaintiff's Motion to Clarify, "Plaintiff's Response to Defendant Rafael Ospina Baraya's Filing (Doc. No. 61)," and Plaintiff's "Compelling Motion to Strike Inadmissible Motions by Defendant Rafael Ospina Baraya," (Doc. Nos. 63, 67), are **DENIED AS MOOT**.

## VII.   CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's *pro se* "Motion for Entry of Default of Defendant Rafael Ospina Baraya," (Doc. No. 44), is **DENIED**;

2. Defendant Rafael's *pro se* "Motion to Strike [D.E. 58] as an Improper Surreply," (Doc. No. 60), is **GRANTED**, and Plaintiff's surreply—his "Response to Defendant Rafael Ospina Baraya's Amended Reply to Motion to Dismiss with Prejudice"—(Doc. No. 58), is **STRICKEN** from the record;

3. Defendant Rafael Ignacio Ospina Baraya's ("Rafael") *pro se* "Motion to Dismiss with Prejudice," (Doc. No. 50) is **GRANTED IN PART** to the extent it seeks dismissal of all of Plaintiff's claims as against all Defendants, but **DENIED IN PART** to the extent it requests that such dismissal be with prejudice, and this action is **DISMISSED WITHOUT PREJUDICE** to be refiled in a court with appropriate jurisdiction;[10]

4. Defendant Rafael's *pro se* "Motion for Sanctions," (Doc. No. 70), is **DENIED**;

---

[10] The Court emphasizes, however, that this Opinion is not to be construed as a decision on the sufficiency or merits of the claims against any of the Defendants.

19

5. Plaintiff's *pro se* "Emergency Motion to Strike Defendant's Motion for Sanctions," (Doc. No. 71), is **DENIED**;

6. Plaintiff's *pro se* "Motion for Entry of Default of Defendants Javier Ospina Baraya, Angela Ospina Baraya, and Patricia Ospina Baraya," (Doc. No. 43), is **DENIED AS MOOT**;

7. Plaintiff's *pro se* "Motion to Clarify Court Order and Motion for Entry of Default of Defendants," (Doc. No. 56), is **DENIED AS MOOT**;

8. Plaintiff's *pro se* "Response to Defendant Rafael Ospina Baraya's Filing (Doc. No. 61)," (Doc. No. 63), is **DENIED AS MOOT**;

9. Plaintiff's *pro se* "Compelling Motion to Strike Inadmissible Motions by Defendant Rafael Ospina Baraya," (Doc. No. 67), is **DENIED AS MOOT**; and

10. The Clerk of Court is respectfully **DIRECTED** to close this case.

**IT IS SO ORDERED.**

Signed: August 31, 2023

_____
Frank D. Whitney
United States District Judge